**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
----------------------------------------------------------------X

LILIANA BARRIOS-CONTRERAS,

                            **Plaintiff,**

          **-against-**

BIG FISH ENTERTAINMENT LLC et al.,

                          **Defendants.**

----------------------------------------------------------------X

**25-CV-3203 (JGLC)(SN)**

**OPINION & ORDER**

**SARAH NETBURN, United States Magistrate Judge:**

Plaintiff, proceeding *pro se*, brings this action against numerous defendants arising out of her participation in the television series *Black Ink Crew – Chicago* (the "Show") and the subsequent airing and distribution of an episode addressing her removal from the Show. Defendants move to compel arbitration under the Federal Arbitration Act (the "FAA") or, in the alternative, to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.

The Court GRANTS the motion to compel arbitration and stays this action in its entirety pending completion of arbitration.

## BACKGROUND

"In the context of motions to compel arbitration brought under the [FAA] … the court applies a standard similar to that applicable for a motion for summary judgment," Bensadoun v. Jobe-Riat, 316 F.3d 171, 175 (2d Cir. 2003), "and courts may therefore consider materials outside the complaint, including the arbitration agreement itself." Alfonso v. Maggies Paratransit

Corp., 203 F. Supp. 3d 244, 247 (E.D.N.Y. 2016). The Court, thus, may rely on materials outside of Plaintiff's pleadings to adjudicate these motions.

Big Fish Entertainment LLC ("Big Fish") produced a reality television show titled *Black Ink Crew – Chicago* for Viacom Media Networks ("VMN"), which is a division of Viacom International Inc. ("VII"). Am. Compl., ECF No. 47 ¶ 6; ECF No. 18-7 at 2. Plaintiff appeared as a cast member on the Show from August 2017 through July 2020. Id. ¶ 5. In connection with her participation, Plaintiff signed a Participant Agreement (the "Agreement"), which contained a mandatory arbitration provision requiring her to resolve all disputes arising from the Agreement through arbitration. See Dkt. No. 18-1 at 9, 15. Plaintiff's participation in the Show ended in 2020. That same year, an episode of the Show aired stating that Plaintiff had been removed from the Show due to "past racial insensitivity." Am. Compl. ¶ 36.

Following her removal from the Show, Plaintiff commenced an action in the Southern District of New York against Defendants Big Fish, Dan Cesareo, and Rocky Bronzino II alleging that her termination was retaliatory and racially motivated. See Barrios-Contreras v. Big Fish Entertainment, LLC et al. ("Barrios I"), No. 23-CV-5821 (JGLC) (HJR), ECF No. 1. The defendants moved to compel arbitration pursuant to the Agreement, which the court granted. See Barrios I, 2024 WL 3834829 (S.D.N.Y. Aug. 15, 2024).

In April 2025, Plaintiff filed this action against Big Fish, Cesareo, Bronzino, and Rasheed J. Daniels (the "Big Fish Defendants") and a dozen other corporate and individual defendants.[1]

---

[1] Plaintiff names "Paramount Global f/k/a ViacomCBS Inc." and "VH1" as defendants in the First Amended Complaint. The Court construes Plaintiff's references to "Paramount Global f/k/a ViacomCBS Inc." to refer to Paramount Global, which has been substituted on the docket. The Court further construes Plaintiff's references to "VH1" to refer to VII, the corporate entity that owns and operates the VH1 brand. Although Plaintiff names "YouTube TV" as a defendant, the Court construes Plaintiff's references to "YouTube TV" to refer to Google LLC ("Google"), the corporate entity that owns and operates the YouTube TV service. The Court likewise construes Plaintiff's references to "Apple TV" to refer to Apple Inc. ("Apple"), and Plaintiff's references to "Pluto TV" to refer to Pluto Inc ("Pluto").

Plaintiff asserts additional claims and theories of harm, alleging, among other things, that the Big Fish Defendants submitted false declarations regarding Plaintiff's income in <u>Barrios I</u>, that she was defamed by statements made during the Show, and that her compensation was misstated in tax documents. As to other defendants, which continue to stream the Show on their streaming platforms, Plaintiff alleges that by continuing to distribute the episode containing the challenged statements, they are using her name, image, and likeness without authorization or consent.

**DISCUSSION**

There are four motions pending. The Big Fish Defendants, together with Amazon.com Services LLC ("Amazon"), MGM Television Entertainment, Inc. ("MGM"), VII, BET Streaming LLC ("BET"), Pluto, Paramount Global, Sling TV LLC ("Sling"), Lindsey Bannister, and Chris Engelmann move to compel arbitration pursuant to the Participant Agreement, arguing that Plaintiff expressly agreed to arbitrate her claims against them. <u>See</u> ECF Nos. 58, 104. Defendants Roku Inc. ("Roku") and Apple Inc. ("Apple") each move to compel arbitration on the basis of equitable estoppel. Defendant Google LLC ("Google"), in turn, moves to dismiss Plaintiff's claims.

## I.    Legal Standard

The Federal Arbitration Act ("FAA") governs "any arbitration agreement within the coverage of the Act." <u>Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.</u>, 460 U.S. 1, 24 (1983). Pursuant to the FAA, an arbitration provision in a contract involving a commercial transaction is "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2; <u>see</u> <u>also</u> <u>In re Am. Exp. Fin. Advisors Sec. Litig.</u>, 672 F.3d 113, 127 (2d Cir. 2011). A district court has "no discretion regarding the

arbitrability of a dispute when the parties have agreed in writing to arbitration." Leadertex, Inc. v. Morganton Dyeing & Finishing Grp., 67 F.3d 20, 25 (2d Cir. 1995) (internal citations omitted).

In deciding whether to compel arbitration, "a court must first decide whether the parties agreed to arbitrate." Zachman v. Hudson Valley Fed. Credit Union, 49 F.4th 95, 101 (2d Cir. 2022). "To determine whether to compel arbitration, courts perform a two-step inquiry that looks at contract principles 'governed by state rather than federal law.'" Cap Gemini Ernst & Young, U.S., L.L.C. v. Nackel, 346 F.3d 360, 365 (2d Cir. 2003) (per curiam). Step one is "whether the parties agreed to arbitrate disputes at all," and step two is "whether the dispute at issue comes within the scope of the arbitration agreement." ACE Capital RE Overseas Ltd. v. Central United Ins. Co., 307 F.3d 24, 28 (2d Cir. 2002). "[T]he party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration." Green Tree Fin. Corp.-Alabama v. Randolph, 531 U.S. 79, 91 (2000).

The FAA "directs a federal court to order parties to proceed to arbitration if there has been a failure, neglect, or refusal of any party to honor an agreement to arbitrate." Scherk v. Alberto-Culver Co., 417 U.S. 506, 511 (1974) (internal citations omitted). Section 3 of the FAA further provides that the court "shall … stay the trial of the action until such arbitration has been had[.]" 9 U.S.C. § 3.

"District courts in this Circuit have regularly concluded that a motion to compel arbitration and stay litigation pending arbitration is non-dispositive and therefore within a Magistrate Judge's purview to decide without issuing a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Fed. R. Civ. P. 72(b)." GateGuard, Inc. v. Goldberg, 585 F. Supp.

3d 391, 394 n.2 (S.D.N.Y. 2022) (quoting Chen-Oster v. Goldman, Sachs & Co., 449 F. Supp. 3d 216, 227 n.1 (S.D.N.Y. 2020) (collecting cases)).

Finally, given that Plaintiff is *pro se*, the Court must liberally construe her pleadings and briefs, reading such submissions "to raise the strongest claims [they] suggest[.]" Hardaway v. Hartford Pub. Works Dep't, 879 F.3d 486, 489 (2d Cir. 2018) (quotation marks omitted).

## II.    The Big Fish Defendants

### A.    The Agreement to Arbitrate is Valid and Enforceable as Against the Big Fish Defendants

Plaintiff advances a variety of arguments as to why the Agreement is not valid or enforceable, including theories related to formation, fraud, unconscionability, and public policy. Plaintiff, however, previously litigated the enforceability of the Agreement containing the arbitration provision in Barrios I. In that action, the court concluded that the arbitration provision was valid, enforceable, and applicable to Plaintiff's claims. The court further found that Plaintiff failed to establish that "the Agreement was either procedurally or substantively unconscionable," and that neither federal nor state law "prevents the enforcement of the Agreement's arbitration clause." Barrios I, 2024 WL 3435854, at *6.

Plaintiff is therefore collaterally estopped from contesting the validity or enforcement of the arbitration agreement. Collateral estoppel, or issue preclusion, prevents parties from relitigating an issue of fact or law in a subsequent action that was fully and fairly litigated in a prior one. See Boguslavsky v. Kaplan, 159 F.3d 715, 719-20 (2d Cir. 1998). Collateral estoppel applies where "(1) the identical issue was raised in a previous proceeding; (2) the issue was actually litigated and decided in the previous proceeding; (3) the party had a full and fair opportunity to litigate the issue; and (4) the resolution of the issue was necessary to support a

5

valid and final judgment on the merits." Marvel Characters, Inc. v. Simon, 310 F.3d 280, 288-89 (2d Cir. 2002).

Each element is satisfied here. Plaintiff challenged the validity of the Agreement in the prior proceeding when she argued that the Agreement is unconscionable. See Barrios I, Dkt. No. 65; see also Marsh & McLennan Agency LLC v. Williams, No. 22-CV-8920 (JPC), 2025 WL 1265817, at *13 (S.D.N.Y. April 30, 2025) ("[I]t is not necessary that the issues be exactly identical; it is sufficient that the issues presented in the earlier litigation are substantially the same as those presented by the later action."). The enforceability of the Agreement was actually litigated and decided when the court rejected Plaintiff's challenges and concluded that the arbitration agreement was valid and enforceable. There is no dispute that Plaintiff had a full and fair opportunity to litigate this issue, and its resolution was necessary to support the order compelling arbitration. The interlocutory nature of the prior order compelling arbitration does not undermine its preclusive effect. That order followed full briefing on the enforceability of the arbitration agreement, rendering it final for collateral estoppel purposes. See id.

Accordingly, Plaintiff is precluded from relitigating the enforceability of the Agreement.

**B. Plaintiff's Claims Against the Big Fish Defendants Fall Within the Scope of the Agreement's Arbitration Clause**

Having determined that the Agreement and its arbitration clause is valid and enforceable, the Court next considers whether Plaintiff's claims fall within the scope of that arbitration provision. To determine whether a dispute falls within the scope of an agreement's arbitration clause, courts undertake a three-part inquiry. First, the court classifies the particular clause as either narrow or broad. See Mehler v. Terminix Int'l Co., 205 F.3d 44, 49 (2d Cir. 2000). If the clause is broad, "there arises a presumption of arbitrability," and arbitration of even a collateral matter will be ordered if the claim alleged implicates issues of contract construction or the

parties' rights and obligations under it. Collins & Aikman Prods. Co. v. Bldg. Sys., Inc., 58 F.3d 16, 23 (2d Cir. 1995). The arbitration provision in the Participant Agreement provides that:

> all claims, controversies or disputes arising out of, in connection with, or relating to this Agreement, the performance or breach thereof or default hereunder, whether based on contract, tort, or statute, including…any claim that this Agreement was induced by fraud shall be resolved by mediation and, if necessary, binding arbitration in New York, New York.

See ECF No. 18-1 at 15. Arbitration clauses employing such language are broad. See, e.g., Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading, Inc., 252 F.3d 218, 225-27 (2d Cir. 2001) (arbitration provision applying to "any dispute from" agreement was broad). Therefore, arbitration must be compelled "unless it may be said with positive assurance that the arbitration clause" does not cover the dispute. Collins, 58 F.3d at 19.

Because the Participant Agreement created and governed Plaintiff's relationship with the Show—including her participation, compensation, and the permitted use of her name, image, and likeness—claims arising from the production, promotion, or exploitation of the Show "arise out of" or "relate to" the Agreement within the meaning of the arbitration provision. As such, Plaintiff's claims against the Big Fish Defendants fall squarely within the scope of the arbitration clause. Although Plaintiff characterizes this action as involving "new defendants, new predicate acts, and new injuries," Am. Compl. ¶ 2, the factual allegations underlying her claims are rooted in her participation in the Show and the rights and obligations created by the Participant Agreement. In support of her civil RICO claim, Plaintiff alleges that Big Fish and its executives misrepresented her compensation for work performed on the Show, issued falsified tax documents reflecting that compensation, and submitted declarations concerning those payments in prior litigation. Am. Compl. ¶¶ 57–67. Her false endorsement claim is likewise premised on allegations that defendants used her name, image, likeness, voice, and persona in commerce

7

without consent by distributing the Show on streaming platforms. Id. ¶¶ 68–74. Similarly, Plaintiff's right-of-publicity claim arises from defendants' use of her likeness in the Show and in related advertising and promotional campaigns. Id. ¶¶ 75–80. Plaintiff's fraud and negligent misrepresentation claims concern the alleged falsification of IRS forms reflecting compensation she received for her work on the Show. Id. ¶¶ 81–87. Her conversion and unjust enrichment claims, in turn, rest on an asserted ownership interest in revenues derived from the use of her name, image, and likeness in the Show. Id. ¶¶ 103–114. In short, each of Plaintiff's claims fundamentally arises from her role as a cast member on the Show and the compensation and promotional uses attendant to that role. See Barrios I, 2024 WL 3435854, at *4.

Plaintiff argues that the Big Fish Defendants waived their right to arbitrate by failing to initiate arbitration proceedings after the Court granted their previous motion to compel arbitration in Barrios I. According to Plaintiff, because the Agreement does not specify which party must initiate arbitration, any ambiguity must be construed against defendants, obligating them to commence arbitration after obtaining a stay in Barrios I and rendering their failure to do so a waiver. This argument is unavailing. Federal policy strongly favors arbitration as an alternative means of dispute resolution, and therefore waiver of arbitration is not to be lightly inferred. PPG Industries, Inc. v. Webster Auto Parts, Inc., 128 F.3d 103, 107 (2d Cir. 1997). In determining whether the Big Fish Defendants waived their right to arbitrate, the Court considers factors such as "(1) the time elapsed from the commencement of litigation to the request for arbitration, (2) the amount of litigation (including any substantive motions and discovery), and (3) proof of prejudice." Id. In Barrios I, the Big Fish Defendants promptly moved to compel arbitration at the outset of the litigation and obtained a stay pending litigation. They did not engage in protracted litigation, seek merits discovery, or delay in asserting their right to arbitrate.

8

Plaintiff does not identify any prejudice resulting from the Big Fish Defendants' failure to initiate arbitration on her behalf. Nothing in the Agreement or the FAA required the Big Fish Defendants to initiate arbitration after the stay was entered. The claims at issue are Plaintiff's claims, and it remains Plaintiff's responsibility to pursue them in the arbitral forum once arbitration was compelled.

Accordingly, Plaintiff's claims against the Big Fish Defendants must be arbitrated.

### III.    All Other Defendants

#### A. Plaintiff Agreed to Arbitrate Her Claims Against Paramount, Sling, VII, and BET, Pluto, Lindsey Bannister, and Chris Engelmann

The arbitration provision expressly extends Plaintiff's agreement to arbitrate beyond Big Fish to include VMN and certain related entities. The Agreement provides that Plaintiff "waives [her] right to sue [Big Fish], VMN, and any other Assignee in a court of law and requires [her] to assert any claims or grievances in arbitration." ECF No. 18-1 at 9. Elsewhere, the Agreement similarly states that Plaintiff waived her right to sue "[Big Fish] (or VMN, and any of its affiliates) or any Released Party" in court and agreed to resolve all grievances through mediation or arbitration. Id. at 11. Read together, these provisions reflect Plaintiff's express agreement to resolve disputes arising from the Agreement not only with Big Fish, but also with VMN, its affiliates, and "any other Assignee," through arbitration rather than litigation. The Agreement defines "Assignee" to include "[Big Fish], VMN and all of their respective licensees, designees, successors and assigns." Id. at 3. VMN is a division of VII, which is a wholly owned subsidiary of Paramount Global. Accordingly, Plaintiff expressly agreed to arbitrate disputes arising from her participation in the Show with Paramount Global and VII as affiliates of VMN. Defendants have also submitted evidence reflecting that Paramount Global entered into a multi-year distribution agreement with DISH Network pursuant to which Paramount networks and content

are carried on Sling TV. See ECF No. 60-9. This supports Defendants' contention that Sling operates as a licensee of Paramount's content, bringing it within the Agreement's definition of "Assignee." As such, Plaintiff is also required to arbitrate her claims against Sling.

Plaintiff's claims against Lindsey Bannister and Chris Engelmann are likewise subject to arbitration, notwithstanding that they are not signatories to the Participant Agreement. Plaintiff alleges that Bannister and Engelmann were senior executives of Paramount Global and knowingly authorized the dissemination of Plaintiff's image across the streaming and broadcasting platforms. See Am. Compl. ¶¶ 9-10. Because Plaintiff seeks to hold individual agents liable for conduct allegedly undertaken on behalf of an entity with whom Plaintiff expressly agreed to arbitrate, those claims are subject to the same arbitration agreement. Plaintiff cannot avoid her agreement to arbitrate disputes arising from her participation in the Show by naming individual agents of Paramount Global for the same alleged conduct. Accordingly, Plaintiff's claims against Bannister and Engelmann are subject to arbitration.

Finally, Defendants' Rule 7.1 corporate disclosure statements reflect that BET and Pluto are owned by Paramount Global. Accordingly, BET and Pluto qualify as affiliates of VMN within the meaning of the Agreement's arbitration provision. See ECF No. 75. Similarly, a separate Rule 7.1 corporate disclosure statement reflects that Big Fish is a wholly owned subsidiary of BFE Media Holdings LLC, which is an indirect, wholly owned subsidiary of MGM, itself a wholly owned subsidiary of Amazon. See ECF No. 53. These corporate relationships establish that Amazon and MGM are affiliates of Big Fish for purposes of the Agreement, bringing Plaintiff's claims against those entities within the scope of the arbitration provision. Accordingly, Plaintiff must arbitrate her claims against Paramount Global, Sling, VII, Pluto, BET, Amazon, MGM, Lindsey Bannister, and Chris Engelmann.

### B. Plaintiff's Claims Against the Remaining Defendants Are Stayed Pending Arbitration

Defendants Roku and Apple, both non-signatories to the Agreement, separately move to compel arbitration of Plaintiff's claims on the basis that Plaintiff should be estopped from denying an obligation to arbitrate her claims against those two defendants. Defendant Google moves to dismiss Plaintiff's claims.

Generally, federal law "does not require parties to arbitrate when they have not agreed to do so[.]" Collins, 58 F.3d at 19. A signatory to an arbitration agreement may, however, be required to arbitrate a dispute with a non-signatory when (a) "the issues the non-signatory is seeking to resolve in arbitration are intertwined with the agreement that the estopped party has signed," and (b) there is a "relationship among the parties of a nature that justifies a conclusion that the party which agreed to arbitrate with another entity should be estopped from denying an obligation to arbitrate a similar dispute with the adversary which is not a party to the arbitration agreement." Doe v. Trump Corp., 453 F. Supp. 3d 634, 640 (S.D.N.Y. 2020).

On this record, the Court will not compel Plaintiff to arbitrate her claims against Roku and Apple under the doctrine of equitable estoppel. Although Plaintiff's claims against these defendants are factually related to her participation in the Show, Roku and Apple are downstream streaming platforms whose alleged involvement is limited to hosting or making available the challenged episode pursuant to content distribution arrangements. Plaintiff does not allege that Roku or Apple participated in the negotiation, execution, or performance of the Participant Agreement, or that they exercised any control over the production, editing, or creative content of the Show. "The plaintiff's *actual dependence* on the underlying contract in making out the claim against the nonsignatory defendant is [] always the sine qua non of an appropriate

11

situation for applying equitable estoppel." Reid v. Tandym Group, LLC, 697 F. Supp. 3d 62, 76 (S.D.N.Y. 2023) (internal citation omitted). Plaintiff's claims against Roku and Apple do not rely on the terms of the Participant Agreement or seek to enforce rights or obligations arising from that contract. Rather, those claims arise from alleged statutory and common-law violations based on the continued distribution of content created and licensed by other defendants.

While there is a factual connection between the Agreement and Plaintiff's claims— inasmuch as the Agreement governed Plaintiff's participation in the Show—such a connection, standing alone, is insufficient to justify compelling arbitration under equitable estoppel. See Ferro v. Allied Interstate, LLC, No. 17-CV-285 (RRM) (RER), 2019 WL 3021234, at *6 (E.D.N.Y. July 10, 2019).

However, Apple and Roku both request, in the alternative, that the Court stay Plaintiff's claims against them pending the result of the arbitration proceeding. In a scenario where some claims are subject to arbitration and others not, "[t]he decision to stay the balance of the proceedings pending arbitration is a matter largely within the district court's discretion to control its docket." Katsoris v. WME IMG, LLC, 237 F. Supp. 3d 92, 110 (S.D.N.Y. 2017). Courts "must consider factors such as desirability of avoiding piecemeal litigation and the degree to which the cases necessitate duplication of discovery or issue resolution." Maritima de Ecologia, S.A. v. Sealion Shipping Ltd., No. 10-CV-8134 (DLC), 2011 WL 1465744, at *5 (S.D.N.Y. Apr. 15, 2011) (citation omitted). "A discretionary stay is particularly appropriate where there is significant factual overlap between the remaining claims and the arbitrated claims." Winter Inv'rs, LLC v. Panzer, No. 14-CV-6852 (KPF), 2015 WL 5052563, at *11 (S.D.N.Y. Aug. 27, 2015); see also Moore v. Interacciones Glob., Inc., No. 94-CV-4789 (RWS), 1995 WL 33650, at *7 (S.D.N.Y. Jan. 27, 1995).

A discretionary stay is warranted. Plaintiff's claims against Google, Roku, and Apple arise from the same operative facts as her claims against the arbitrating defendants and turn on overlapping allegations of misconduct concerning the production, editing, licensing, and distribution of the Show. The First Amended Complaint alleges that Big Fish and Paramount created, controlled, and licensed the allegedly defamatory content and storefront promotional materials, and that the downstream streaming defendants published that content pursuant to those licensing arrangements. Plaintiff asserts identical causes of action—including civil RICO, Lanham Act false endorsement, right of publicity, conversion, and unjust enrichment—against both the arbitrating defendants and the platform defendants, premised on the same alleged false portrayals, thumbnails, banners, and promotional uses of her likeness. Resolution of Plaintiff's claims against the arbitrating defendants will necessarily address core factual questions that bear directly on the claims against the platform defendants, including whether the underlying content was unlawful, whether Plaintiff consented to the use of her likeness, and whether defendants were entitled to license and monetize the Show.

Allowing litigation to proceed against the remaining defendants while those overlapping issues are simultaneously arbitrated would risk inconsistent rulings, duplicate discovery, and inefficiency. A stay therefore serves the interests of judicial economy and consistency, even though Plaintiff is not compelled to arbitrate her claims against the downstream streaming platforms.

## CONCLUSION

The motions to compel arbitration are GRANTED as to the Defendants Big Fish Entertainment LLC, Dan Cesareo, Rocky Bronzino II, Rasheed Daniels, Lindsey Bannister, Chris Engelmann, Paramount Global, Sling, Amazon, MGM, VII, Pluto, and BET. Plaintiff's

claims against all remaining defendants are STAYED pending arbitration. Google's motion to dismiss is denied without prejudice to renewal after the stay is lifted. The parties are directed to provide a status update by September 1, 2026, regarding the arbitration proceedings. Plaintiff is warned that if she fails to initiate arbitration within six months, her claims may be subject to dismissal.

The Clerk of Court is respectfully directed to terminate the motions at ECF Nos. 58, 61, 118, 119, & 126.

**SO ORDERED.**

_____
SARAH NETBURN
United States Magistrate Judge

DATED:        March 5, 2026
              New York, New York